The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer at all relevant times.
3. Hartford Accident and Indemnity Company was the carrier of workers' compensation insurance for defendant-employer at the time of plaintiff's injury.
4. Plaintiff's average weekly wage was $334.04, which yields a compensation rate of $222.70 per week.
5. Plaintiff sustained an injury by accident arising out of and in the course of his employment on October 10, 1994, and defendants admitted liability for said injury on a Form 21 Agreement, which was approved by the Industrial Commission on March 16, 1995. Pursuant to the approved Form 21, payments for temporary total disability have been made continuously since October 11, 1994.
6. The parties agreed to stipulated medical records from plaintiff's treating physicians, and these records are received into evidence.
7. The issues to be decided in this case are whether defendants should be liable for treatment by Dr. D. L. Kelly, Jr., of Winston-Salem and whether such treatment was reasonably required to effect a cure or give relief from plaintiff's compensable injury.
 ***********
Based upon all of the competent, credible, and evidence of record, the undersigned make the following
 FINDINGS OF FACT
1. Plaintiff was employed by employer-defendant as a band-saw operator for approximately one and one-half years prior to October 1994.
2. On October 10, 1994, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment, when he was lifting a wooden skid and experienced the onset of low back pain. Defendants admitted liability for this injury, and a Form 21 Agreement was approved by the Industrial Commission on March 16, 1995.
3. Plaintiff was seen by Dr. Burris, a chiropractor, for manipulation and was then seen by Dr. Robert Hart, his family physician, who prescribed medication and restricted work duties. Dr. Hart referred plaintiff to Dr. H. G. Winfield, III, an orthopaedic surgeon in Hickory, who diagnosed a lumbosacral strain and prescribed a corset.
4. Plaintiff was then seen by Dr. Sami Oweida, an orthopaedic surgeon in Charlotte, on December 5, 1994. Dr. Oweida referred plaintiff to Dr. Leon Dickerson, another orthopaedic surgeon in Charlotte.
5. Dr. Dickerson treated plaintiff from January, 1995 through August, 1995.
6. Dr. Dickerson determined that plaintiff was not a candidate for surgery, as his findings on MRI scan did not match his symptoms and as he was a heavy smoker. In addition, plaintiff complained mainly of back pain, not of leg pain, which is the indication for a laminectomy. As of August 15, 1995, Dr. Dickerson felt that plaintiff had reached maximum medical improvement as a result of his injury and that he sustained a 5% permanent partial impairment of the back as a result of his injury.
7. Dr. Dickerson was of the opinion that a lumbar laminectomy would not be reasonably necessary to effect a cure or give relief from plaintiff's compensable condition, which was a lumbosacral strain superimposed upon degenerative disc disease at three levels.
8. At plaintiff's insistence, plaintiff was seen by Dr. Keith Maxwell, an orthopaedic surgeon in Asheville, on March 23, 1996 for a second opinion. After evaluating plaintiff, Dr. Maxwell was also of the opinion that plaintiff was not a candidate for surgery. Dr. Maxwell stated that a spinal fusion would be the preferred surgery for back pain and that plaintiff was not a candidate for spinal fusion. Dr. Maxwell found no reason to recommend a laminectomy and discectomy at L5-S1.
9. Following his release from Dr. Dickerson's care, plaintiff saw Dr. John Kessel, a family physician, in Hickory, who referred him to Dr. D. L. Kelly, Jr., a neurosurgeon at Wake Forest University in Winston-Salem. Plaintiff was seen by Dr. Kelly on September 6, 1995; and Dr. Kelly indicated that plaintiff was not a surgical candidate, and there was no evidence of compromise or compression of his sciatic nerve based upon examination.
10. Dr. Kelly prescribed an MRI scan, which he thought revealed a bulging disc at L5-S1; and on September 25, 1995, Dr. Kelly performed surgery for a herniated disc at L5-S1. However, he did not find a herniated disc at that level, but instead found an osteophyte or bone spur, which he removed.
11. Subsequent to surgery, Dr. Kelly opined that plaintiff had reached maximum medical improvement on December 29, 1995 and that he retained a 10% permanent partial impairment of the back as a result of his injury and subsequent surgery. Dr. Kelly prescribed permanent work restrictions, including a 30 pound weight-lifting limit, as well as restrictions on bending and stooping.
12. Despite the surgical procedure, plaintiff continued to complain of pain in his back and leg and has been unable to return to work since the date of his injury, October 10, 1994.
13. The surgery by Dr. Kelly on September 25, 1995, a lumbar laminectomy and discectomy, was not reasonably required to effect a cure or give relief from plaintiff's compensable injury, nor did it tend to lessen the period of disability as a result of plaintiff's compensable injury.
14. Dr. Kelly's treatment was not authorized by defendants or by the Industrial Commission, and the undersigned decline to retroactively authorize surgery and treatment by Dr. Kelly.
15. Plaintiff continues to receive compensation for temporary disability while he remains out of work. Plaintiff is entitled to be treated by Dr. Dickerson, and by those physicians to whom he refers plaintiff. Plaintiff is not entitled to medical compensation for treatment by Dr. Kelly or Dr. Kessel.
 ***********
Based on the foregoing stipulations and findings of fact, the undersigned make the following
 CONCLUSIONS OF LAW
1. The surgery and treatment by Dr. Kelly and Dr. Kessel were not reasonably required to effect a cure or give relief and did not tend to lessen plaintiff's disability as a result of his compensable injury.
2. Defendants are not liable for the cost of treatment by Dr. Kelly or Dr. Kessel.
3. Plaintiff may continue to treat with Dr. Dickerson, and with those physicians to whom Dr. Dickerson refers plaintiff for treatment.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 ORDER
1. Plaintiff's claim for approval of treatment by Dr. Kelly and Dr. Kessel is HEREBY DENIED.
2. Plaintiff's request to change treating physicians to Dr. Kelly is HEREBY DENIED.
3. Defendants shall continue to pay compensation of $222.70, until plaintiff returns to work or until further orders of the Commission.
4. Each party shall bear its own costs.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the ___ day of _________, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
JHB:kws